```
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,           :
                                    :
            Plaintiff,              :   01 Civ. 8848 (MBM)
                                    :
     -against-                      :   OPINION AND ORDER
                                    :
$14,346.00 IN U.S. CURRENCY,        :
                                    :
            Defendant.              :
------------------------------------X
```

APPEARANCES:

DAVID N. KELLEY, ESQ.
United States Attorney for the
Southern District of New York
DANIEL R. MARGOLIS, ESQ.
Assistant U.S. Attorney
One St. Andrew's Plaza
New York, NY 10007

EGUAVOEN JACK IGODAN
(Claimant)
Reg. No. 37791-053
P.O. Box 26020
Beaumont, TX 77720-6020

MICHAEL B. MUKASEY, U.S.D.J.

This is a forfeiture action brought by the government against funds that allegedly were to be used in a narcotics transaction. Claimant Jack Igodan was the defendant in the underlying criminal case. He objects to the seizure on the ground that he was holding the money to buy a house (Answer, First Defense), and claims the funds. The government moves for summary judgment. For the reasons summarized below, the government's motion is granted.

The statute in question here is 21 U.S.C. § 881(a)(6), which makes subject to forfeiture to the United States, "All moneys . . . furnished to intended to be furnished by any person in exchange for a controlled substance . . . ."

On March 12, 2001, Igodan, represented by counsel, pleaded guilty before Judge Kaplan of this court to attempting to distribute, and to possess with intent to distribute, approximately 300 grams of mixtures and substances containing a detectable amount of heroin. When asked to explain in his own words what he had done that made him guilty of the offense, Igodan, who had been placed under oath, responded that he was called from Pakistan by a former roommate who said he should meet the caller's brother "to come get some heroin, says give it to me, free of charge." (3/12/01 Tr. pp. 2, 12) According to Igodan at the time of his plea, events then unfolded as follows:

> After, the brother kept calling and calling me, and he said I should come up with some money. So, I didn't have any money in my possession. So what I did, which was very stupid, I went to my retirement 401-K.

1

>THE COURT: You went to your 401-K.
>
>THE DEFENDANT: Withdrew money from there, allowed him to come over, which was wrong. But I didn't know this fellow. He was friendly on the telephone, everything. When I came he said I should meet him in Manhattan, I don't know, New York. I was in a hotel. I went to Manhattan to see him and then we talked briefly. He said that he had a 2 kilos. I said I don't have money for 2 kilos. This is the money I have. And he said because I don't want to buy what I wanted to buy, he wouldn't sell anything for me. I said OK, so I left. I went back to the hotel. I was in the hotel, a knock on the door. And it was the DEA. I was wrong, I know, I know.

(<u>Id.</u>)

Igodan concedes in his answer that the money that was seized from him at the time of his arrest was the money he withdrew from his 401-k account. (Answer ¶ 2) As set forth above, he takes the position now that he was holding the funds seized from him to purchase a house, and that he was to receive the drugs on consignment, as he said during his allocution he was told initially. (Answer, Second Defense)

The short and dispositive answer to Igodan's current position is that, having entered a guilty plea and made under oath in open court the statements quoted above, which admitted that the funds in question were, in the words of the statute, "intended to be furnished . . . in exchange for a controlled substance," he is judicially estopped to repudiate those statements now. <u>Adames</u> v. <u>United States</u>, 171 F.3d 728 (2d Cir. 1999), where a defendant tried the same thing without success, is directly on point. After noting that the defendant's admissions in his allocution established that his interest in the money

there at issue was forfeited when a codefendant tried to use the property in question to purchase drugs, the Court concluded as follows: "Because Adames, in his response to the government's summary judgment motion, has failed to adduce any evidence undermining the strong presumption that his plea allocution statements were accurate, the district court properly granted the government's motion for summary judgment." Id. at 733 (citation and internal quotation marks omitted).

As noted in Adames, statements made by a defendant in the course of a guilty plea carry what the Supreme Court has described as a "strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Judge Weinfeld wrote of such staements that they are "solemn declarations; they are not to be lightly disregarded in favor of his present self-serving assertion." United States v. Napolitano, 212 F.Supp. 743, 747 (S.D.N.Y. 1963). So too with Igodan's statements. He has obviously regretted at leisure -- 60 months of it, according to the sentence imposed by Judge Kaplan -- his concession during the guilty plea. However, that regret is not a sufficient basis to defeat the legal force of that concession.

For the above reasons, the government's motion for summary judgment is granted.

SO ORDERED

Michael B. Mukasey
U.S. District Judge

Dated: New York, New York
April 28, 2005

3